**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIP CARNEY, | Case No. |
| Plaintiff, | |
| v. | |
| INTERNATIONAL CAPITAL GROUP, ICG ASIA FINANCE LIMITED, ICG USA, LLC, "ABC CORPORATIONS" 1-10 (NAMES FICTICIOUS), LARRY RUSSEL, and BRIAN NORD, | |
| Defendants. | |

## COMPLAINT

Plaintiff, Philip Carney ("Plaintiff" or "Carney"), by way of Complaint against Defendants, International Capital Group, LLC, ("ICG"), ICG Asia Finance Limited ("ICG Asia"), ICG USA, LLC ("ICG USA"), ABC Ccorporations 1-10 (collectively the "Corporate Entities'), Larry Russel, and Brian Nord (collectively "Defendants"), states as follows:

## PARTIES

1.       Plaintiff is an individual with an address of Paramount Court, Corrig Road, Sandyford, Dublin, D18R9C7.

2.       Defendant International Capital Group, LLC, is a Delaware limited liability company formed on August 13, 2008 with its principal place of business located at either 1824 Sonoma Trace, Brentwood, TN 37027 or 425 North Martingale Road, Suite 1540, Schaumburg, IL 60173.

3.       Upon information and belief, Defendant ICG Asia Finance Limited is a limited liability company incorporated under the laws of Hong Kong with its principal place of business located at 303 Hennessy Road, Wan Chai, Hong Kong. It is an affiliate of ICG.

4.      ICG USA, LLC is a Delaware limited liability company with its principal place of business located at.either 1824 Sonoma Trace, Brentwood, TN 37027 or 425 North Martingale Road, Suite 1540, Schaumburg, IL 60173.

5.      ABC Corporations 1-10 are corporations, limited liability companies or other organized entities within the parent/subsidiary corporate structure of ICG and/or they are entities owned or controlled by Defendant Nord and/or Defendant Russell.

6.      Defendant Larry Russell is a citizen of Indiana with a last known primary residence located at 5929 South Lama Street, Terre Haute, Indiana 47802.

7.      Defendant Brian Nord is a citizen of Tennessee with a last known primary residence located at 1824 Sonoma Trace, Brentwood, TN 37027.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000 exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

9.      Venue is proper under 28 U.S.C. § 1391(b)(1) and § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein either occurred in this District or because this District was the chosen venue for resolution of disputes.

## FACTUAL BACKGROUND

10.     On or about March 8, 2012, Plaintiff entered into a securities transaction and loan agreement with ICG Asia for approximately $2,217,636 (the "Loan").  The agreement is set forth as Exhibit A to the Complaint.

11.     At the time that he executed the Loan, Plaintiff was otherwise unaware that ICG, Defendant Nord and Defendant Russell were under investigation by the Securities and Exchange Commission for participating in, directing or authorizing stock based loans through entities

controlled by these principals or that Defendant Nord had been barred by FINRA regarding allegations that he had engaged in stock based loans with customers.

12.     As of November 2015, the sum of $1,449,600 remained outstanding under the Loan arranged by ICG, Nord and Russell.

13.     In order to resolve the outstanding balance, Jeffrey C. Leo, a member of Steelworks Investments, Ltd. ("Steelworks"), an entity organized under the laws of the Republic of Ireland, acting as agent for Plaintiff, communicated with and arranged with Defendant Nord and Defendant Russell, individually and acting as  representatives of ICG and ICG Asia, (1) to liquidate the investment of Plaintiff in the Loan; (2) to come to an amicable resolution of the remaining sum due to Plaintiff; and (3) to structure a repayment to plaintiff in a series of four (4) payments.

14.     As a result of those negotiations between Leo, as agent for Plaintiff, and Defendants Nord and Russell, on November 17, 2015, the parties entered into an agreement (the "Installment Agreement") and General Release (the "Release") whereby Plaintiff agreed to sell his stock portfolio, valued at $3,064,491.20, to ICG Asia and ICG Asia agreed to expunge the $1,449,600 outstanding balance on the Loan and to compensate Plaintiff for the remaining balance of $1,614,891.20 as follows:

   (a)     ICG and/or ICG Asia was authorized to pay $161,489.10 to Leo and/or Steelworks as a "Facilitation Fee";

   (b)     ICG and/or ICG Asia would pay the remaining balance in four installments of $363.350.52 on December 1, 2015, January 15, 2016, March 1, 2016, and April 15, 2016.

15.     A copy of the Release is attached to the complaint as Exhibit B and the terms are incorporated by reference herein.

16.     Prior to Plaintiff's entry into the Installment Agreement and the Release, Plaintiff was unaware and was not informed that ICG and Defendants Nord and Russell were the subject of a Cease and Desist Proceeding instituted by the SEC bearing File No. 3-1633 that ultimately resulted in cease and desist constraints on the Defendants, including the imposition of fines, penalties, orders of disgorgement and certain barring provisions.

17.     At the time that Plaintiff entered into the Installment Agreement and Release, and not withstanding their entry into the transaction with Plaintiff referenced in the release, Defendants did not have the available funds to make any of the payments.

18.     Instead, Defendant Nord and Defendant Russell arranged a series of loans between Steelworks and ICG USA, an affiliated entity, through Leo, to fund the first three installment payments due to Plaintiff.

19.     During the negotiations between Leo and the Defendants, and consistent with the personal dominion and control that Nord and Russell held over the network of ICG entities and affiliates, named herein as ABC Corporations 1-10, Defendants offered to have various entities, including "First Prestige International" or "other ICG entities" guarantee the loans from Steelworks. Defendant Nord also agreed to personally guarantee a portion of the loans.

20.     Consistent with their dominion and control over the network of ICG entities, Defendant Nord and Defendant Russell made a wire payment to Plaintiff through yet another affiliated entity - a Reddington Administrators Ltd account in Illinois.

21.    Notwithstanding that the last of the four installment payments became due on April 15, 2015, the Defendants failed to make that payment and have refused to make that payment to date.

22.    From and after April 15, 2015, Defendants, communicating with Leo as the agent for Plaintiff, proffered one excuse after another, promising payment by dates certain, which never occurred.

23.    From and after April 15, 2015, Defendants, communicating through Leo as agent for Plaintiff, urged and represented to Plaintiff that the obligation, which was acknowledged as due, would be resolved to Plaintiff's satisfaction.

24.    These representations, false in nature, were uttered up to and including the date of the filing of this Complaint to induce Plaintiff to forebear from taking legal actions against them.

25.    These representations, false in nature, were made to Plaintiff without informing him that Defendants were in violation of the SEC Order dated January 29, 2015 and without advising him that the SEC had instituted an Enforcement Proceeding in the United States District Court for the Northern District of Illinois, Docket No1:18-cv-07065, for failure to pay the fines, penalties assessed, and disgorgements required under the prior SEC proceedings for all in an aggregate amount exceeding $3,700,000.

26.    In addition to the fourth payment due to Plaintiff under the Installment Agreement and Release, on information and belief, the Facilitator's Fee was never paid by the Defendants and, due to the breaches alleged herein, is now also due and owing to Plaintiff.

**FIRST COUNT**
**(Breach of Contract)**

27.    Plaintiff repeats and incorporates herein by reference all the allegations contained in Paragraphs 1 through 26 above as if set forth in full.

28.    Plaintiff performed all of his obligations under the Installment Agreement.

29.    Defendants have breached the material terms and conditions of the Installment

Agreements by, among other things, failing to pay final installment and failing to pay the

Facilitation Fee.

30.    As a result of Defendants' wrongful actions and breaches of contract, Plaintiff has

been damaged.

**WHEREFORE,** Plaintiff, Philip Carney, demands that judgment be entered against

Defendants ordering and awarding:

     (a)    The sum of $524,839.62, and other compensatory and consequential
           damages;

     (b)    Pre-judgment and post-judgment interest;

     (c)    Attorneys' fees and costs of suit; and

     (d)    Such other and further relief as the Court deems just and proper.

## SECOND COUNT
### (Breach of the Duty of Good Faith and Fair Dealing)

31.    Plaintiff repeats and incorporates herein by reference all the allegations contained

in Paragraphs 1 through 30 above as if set forth in full.

32.    The Installment Agreement, as with all contracts, contains an implied covenant of

good faith and fair dealing.

33.    Defendants breached that duty of good faith and fair dealing by repeatedly

assuring Plaintiff that they would be able to make the final payment, even though they knew that

they would not be able to make the payments, thereby stringing Plaintiff along for years with

false statements in order to induce Plaintiff to forebear from instituting litigation against them.

34.    As a result of Defendants' wrongful actions and breaches of the duty of good faith

and fair dealing, Plaintiff has been damaged.

6

**WHEREFORE,** Plaintiff Philip Carney demands that judgment be entered against Defendanst ordering and awarding:

    (a)    The sum of $524,839.62, and other compensatory and consequential damages;

    (b)    Pre-judgment and post-judgment interest;

    (c)    Attorneys' fees and costs of suit; and

    (d)    Such other and further relief as the Court deems just and proper.

### THIRD COUNT
#### (Fraud)

35.    Plaintiff repeats and incorporates herein by reference all the allegations contained in Paragraphs 1 through 34 above as if set forth in full.

36.    Defendants repeatedly represented that they would be able to make the final installment under the Installment Agreement and that they would make it in the near future.

37.    These representations were false when made.

38.    Contrary to these assertions, Defendants knew that they would not have the money to pay the required installment, nor did they ever intend to pay the final installment.

39.    Defendants made these misrepresentations for the purpose of inducing Plaintiff to provide them with additional time to make the payments and to forebear from instituting litigation against them.

40.    Plaintiff relied on Defendants misrepresentations and continued to provide Defendants with additional time to make the payments.

41.    As a result of Defendants' misrepresentations, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff Philip Carney demands that judgment be entered against Defendants ordering and awarding:

(a)    The sum of $524,839.62, and other compensatory and consequential damages;

(b)    Pre-judgment and post-judgment interest;

(c)    Attorneys' fees and costs of suit; and

(d)    Such other and further relief as the Court deems just and proper.

## FOURTH COUNT
### (Book Account)

42.    Plaintiff repeats and incorporates herein by reference all the allegations contained in Paragraphs 1 through 41 above as if set forth in full.

43.    Plaintiff has on his accounts a book account balance for the remaining installment in the amount of $524,839.62, plus interest, attorneys' fees, and other damages.

44.    Defendants have admitted that they owe the $524,839.62.

45.    Defendants have promised to pay the $524,839.62

46.    Defendants have failed to pay this book account balance.

47.    As a result of Defendants' failure to pay this book account balance, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff Philip Carney demands that judgment be entered against Defendants ordering and awarding:

(a)    The sum of $524,839.62, and other compensatory and consequential damages;

(b)    Pre-judgment and post-judgment interest;

(c)    Attorneys' fees and costs of suit; and

(d)    Such other and further relief as the Court deems just and proper.

## FIFTH COUNT
### (Fraudulent Conveyance under Debtor and Creditor Law § 270 *et. seq.*)

8

48.     Plaintiff repeats and incorporates herein by reference all the allegations contained in Paragraphs 1 through 47 above as if set forth in full.

49.     Upon information and belief, Defendant Nord and Defendant Russell made various financial transactions between the Corporate Entities.

50.     Upon information and belief, Defendant Nord and Defendant Russell made these transactions with the specific intent to hinder, delay, or defraud either present or future creditors.

51.     Such transactions violate New York's implementation of the Uniform Fraudulent Conveyance Act.

52.     As a result of Defendants' wrongful actions, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff Philip Carney demands that judgment be entered against Defendants ordering and awarding:

   (a)     The sum of $524,839.62, and other compensatory and consequential damages;

   (b)     Pre-judgment and post-judgment interest;

   (c)     Attorneys' fees and costs of suit; and

   (d)     Such other and further relief as the Court deems just and proper.

<u>**SIXTH COUNT**</u>
**(Piercing the Corporate Veil, Alter Ego & Undercapitalization)**

53.     Plaintiff repeats and incorporates herein by reference all the allegations contained in Paragraphs 1 through 52 above as if set forth in full.

54.     Upon information and belief, Defendant Nord and Defendant Russell are corporate officers or owners of the Corporate Entities.

55.     Upon information and belief, there is a unity of interest among Defendant Nord, Defendant Russell, and the Corporate Entities such that separate personalities do not exist.

56.     Upon information and belief, Defendant Nord and Defendant Russell have asserted dominance over the Corporate Entities through, among other things, gross undercapitalization of the corporate entities, failing to observe corporate formalities, misappropriation of funds, absence of corporate records, and siphoning of corporate funds.

57.     The Corporate Entities are merely a façade for the operation of Defendant Nord and Defendant Russell.

58.     Defendant Nord and Defendant Russell have made material misrepresentations in connection with ICG, ICG Asia, and ICG USA's ability to pay the final installment required under the Installment Agreement and they refuse to remedy the issues hiding behind the corporate shield.

59.     If the acts complained of are treated as those of ICG, ICG Asia, and ICG USA alone, a fraud or injustice will result.

60.     As a result of Defendants' wrongful actions, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff Philip Carney demands that judgment be entered against Defendants ordering and awarding:

(a)     The sum of $524,839.62, and other compensatory and consequential damages;

(b)     Pre-judgment and post-judgment interest;

(c)     Attorneys' fees and costs of suit; and

(d)     Such other and further relief as the Court deems just and proper.

## <u>CERTIFICATION</u>

I hereby certify that the matter in controversy is not the subject of any other Complaint pending in any Court or of a pending arbitration proceeding and that no such other complaint or

arbitration proceeding is contemplated.  I further certify that, to the best of my knowledge, no other parties should be joined at this time.

ARCHER & GREINER
A Professional Corporation
Attorneys for Plaintiff

BY:*/s/ Thomas J. Herten*
Thomas J. Herten

DATED: January 8, 2021

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

ARCHER & GREINER
A Professional Corporation
Attorneys for Plaintiff

BY: */s/ Thomas J. Herten*
Thomas J. Herten

DATED: January 8, 2021

220065186v3

11

# EXHIBIT A

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

<u>DATED 8 March 2012</u>

**PHILIP PETER CARNEY**

as Borrower

and

**ICG ASIA FINANCE LIMITED**

as Lender

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**LOAN AGREEMENT**

**relating to
a term loan facility of approximately US$2,217,636**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

## TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| Parties | ................................................................ | 3 |
| Recitals | ................................................................ | 3 |
| Clauses |  |  |
| 1. | Definitions ................................................ | 3 |
| 2. | Conditions ................................................ | 6 |
| 3. | Advance of Loan ........................................ | 6 |
| 4. | Suspension, Dilution Event & Corporate Action ...................... | 7 |
| 5. | Interest ................................................... | 7 |
| 6. | Repayment ............................................... | 8 |
| 7. | Payments and Evidence of Debt ................... | 8 |
| 8. | Loan Event of Default ................................. | 9 |
| 9. | Representations and Warranties ................... | 11 |
| 10. | Undertakings ............................................ | 12 |
| 11. | Indemnities .............................................. | 13 |
| 12. | Amendment ............................................... | 13 |
| 13. | Costs and Expenses ................................... | 13 |
| 14. | Miscellaneous ........................................... | 14 |
| 15. | Notices ................................................... | 15 |
| 16. | Governing Law .......................................... | 15 |
|  | Schedule 1 ............................................... | 18 |
|  | Schedule 2 ............................................... | 20 |
|  | Schedule 3 ............................................... | 21 |

**THIS AGREEMENT** is made on 8 March 2012.


## BETWEEN

(1)     **PHILIP PETER CARNEY,** a holder of Republic of Ireland passport No. PA0573758 of 11 Vale View Grove, The Park; Cabinteely; Dublin 18; Ireland (the "Borrower"); and

(2)     **ICG ASIA FINANCE LIMITED**, a company incorporated under the laws of Hong Kong under number 1667967 whose registered office is at 8/F, CRE Building, 303 Hennessy Road, Wan Chai, Hong Kong (the "Lender").


## WHEREAS

(A)     The Lender has agreed to make available to the Borrower a term loan facility in the approximate sum of up to US$2,217,636, (the "Loan") subject to and upon the terms and conditions set out in this Agreement and any amendments or schedules hereto.

(B)     In consideration of, inter alia, ICG Investment Limited (the "Guarantor") agreeing to provide a guarantee for the Loan, the Borrower has agreed to enter into the Share Pledge Agreement dated 8 March 2012 (the "Share Pledge Agreement") for the pledge of shares in the capital of the companies listed at Schedule 1 hereto (each an "Issuer" and collectively, the "Issuers") to the Guarantor on the terms therein set out.


**IT IS NOW AGREED** as follows:-

1.     **DEFINITIONS**

1.01     In this Agreement (including the Recitals and the Schedules), the following expressions shall have the following meanings unless the context otherwise requires:-

| | |
|---|---|
| "Abnormal Suspension" | the listing of the Shares on the Stock Exchange having been revoked or withdrawn, or suspended for more than five (5) consecutive Business Days; |
| "Affiliate" | means any company, corporation, or other entity that controls, is controlled by, or is under common control with, the specified company or corporation; |
| "Business Day" | any day (other than a Saturday, a Sunday or a public holiday) on which the Stock Exchange is open for the business of dealing in securities; |

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

| | |
|---|---|
| "Collateral Receipt Date" | has the meaning assigned to it in the Share Pledge Agreement; |
| "Corporate Action" | any event that affects the rights attaching to the Issuer's issued Shares including, but not limited to, a rights issue, open offer, share subdivision/consolidation, change in board lot size, warrant exercise, issue of convertible bonds, spin-off, takeover and privatization; |
| "day" | calendar day; |
| "Default Rate" | the Interest Rate plus 8%; |
| "Dilution Event" | any event leading to a dilution of the Shares of at least 5% as at the date of this Agreement; |
| "Guarantee" | the guarantee dated 8 March 2012 executed by the Guarantor guaranteeing repayment to the Lender of the Indebtedness; |
| "US$" or "United States dollars" | United States dollars, the lawful currency of the United States of America; |
| "Hong Kong" | the Hong Kong Special Administrative Region of the People's Republic of China; |
| "Indebtedness" | the Loan and interest thereon and all other moneys, from time to time, due or become due to the Lender and still outstanding under this Agreement; |
| "Interest Payment Date" | the last day of an Interest Period; |
| "Interest Period" | every quarterly period commencing from the date specified in Clause 5.02; |
| "Interest Rate" | simple interest of 5.49% per annum; |
| "Loan" | the amount of the term loan facility to be provided to the Borrower by the Lender and for the time being outstanding; |
| "Loan Completion Date" | being the 5th trading day of the Pricing Period; |
| "Loan Event of Default" | any of the events or circumstances described in Clause 8; |
| "Loan to Value" | 70%; |

ICG ASIA FINANCE LIMITED
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION

_____/_____

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

| "Maturity Date" | 42 months from the Loan Completion Date, unless otherwise extended under Clause 4.04; |
| --- | --- |
| "Origination Fee" | 5.00% of the Loan; |
| "Pledged Equity Interest" | has the meaning assigned to it in Clause 1.01 of the Share Pledge Agreement; |
| "Pricing Period" | the five (5) day trading period of the Shares commencing on the trading day that is two (2) days prior to the Collateral Receipt Date or the five (5) trading days period as determined pursuant to Clause 4.01; |
| "Share(s)" | ordinary share(s) of the Issuers stipulated at Schedule 1 hereto; |
| "Stock Exchange" | each of the exchanges stipulated at Schedule 1 hereto (each a "Stock Exchange" and collectively, the "Stock Exchanges"); and |
| "trading day" | a Business Day when the Shares are traded on the Stock Exchange. |

1.02    In this Agreement words connoting any gender include all genders; words connoting the singular include the plural and words connoting the plural include the singular; and references to persons include bodies corporate or unincorporate.

1.03    For the purposes of this Agreement any references to a Recital, Clause, sub-Clause or Schedule is a reference to a Recital, Clause, sub-Clause or Schedule of this Agreement, and the Recitals and Schedules form part of and are deemed to be incorporated in this Agreement.

1.04    In this Agreement, unless the context requires otherwise, any reference to:-

an "authorisation" includes any approvals, consents, licences, permits, franchises, permissions, registrations, resolutions, directions, declarations and exemptions;

a Loan Event of Default which is "continuing" means a Loan Event of Default which has not been remedied or waived; and

"including" or "includes" means including or includes without limitation.

1.05    The expressions "Borrower" and "Lender" shall, where the context permits, include their respective successors and permitted assigns and any persons deriving title under them.

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

1.06    The headings used in this Agreement and the Schedules are inserted for convenience only and shall be ignored in construing this Agreement.

1.07    References to statutory provisions shall be construed as references to those provisions as amended or re-enacted or as their application is modified by other provisions of which they are re-enactments (whether with or without modification) and shall also include regulations or orders from time to time made pursuant to them.

1.08    A document expressed to be "in the approved terms" means a document the terms of which have been approved by or on behalf of the parties hereto and a copy of which has been signed for the purposes of identification by or on behalf of the parties hereto.

1.09    In this Agreement, any determination (if any) as to whether any event, situation or circumstance is "material" shall be made by the Lender, whose determination (if made reasonably and in good faith) shall be conclusive and binding on the Borrower.

## 2.    **CONDITIONS**

2.01    The obligation of the Lender to advance the Loan, or any part thereof, to the Borrower is conditional upon:-

(a)    the Shares not having been suspended from trading on the Stock Exchange on the fourth and fifth trading day of the Pricing Period;

(b)    no Loan Event of Default, Dilution Event or Corporate Action or prospective Loan Event of Default, Dilution Event or Corporate Action having occurred or upon the making of the Loan will have occurred and all representations and warranties by the Borrower herein or otherwise in writing in connection herewith being true and correct as at the date on which the Loan is to be made with reference to the facts and circumstances that are subsisting;

(c)    completion of the Share Pledge Agreement;

and the Lender having received payment in full of the Origination Fee and all sums then due and payable by the Borrower under and in accordance with Clause 14.

## 3.    **ADVANCE OF LOAN**

3.01    Subject to the conditions in Clause 2.01 being satisfied, the Lender shall advance the Loan to the Borrower in immediately available funds no later than 6:00 p.m. (Hong Kong) on the Loan Completion Date.

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

3.02   The Lender shall make all amounts due under the Loan available to the Borrower by electronic bank transfer to the bank account specified below:

**Account Name:**
**Bank:**
**Address:**
**Swift Code:**
**Multi-Currency Bank Account #:**

4.   **SUSPENSION, DILUTION EVENT & CORPORATE ACTION**

4.01   For the purpose of determining the Pricing Period, the five (5) trading days shall be consecutive and uninterrupted such that in the event the Shares are suspended from trading on the Stock Exchange for any period of time during the five (5) trading days period commencing two (2) days prior to the Collateral Receipt Date, the Pricing Period shall be re-determined and the Lender shall notify the Borrower of the Pricing Period once it has been determined.

4.02   If a Dilution Event or Corporate Action shall have occurred on the 1st or 2nd trading day after the Collateral Receipt Date, the Lender may at its absolute discretion by notice to the Borrower reduce the amount to be advanced under Clause 3.01.

4.03   If the Shares have been suspended from trading on the Stock Exchange for any period of time (including an Abnormal Suspension) between the Maturity Date and the 90th day before the Maturity Date (both dates inclusive), the Maturity Date shall be extended by the period of such suspension to the Business Day immediately thereafter.

For the purpose of calculating the extension above, any suspension for less than one (1) trading day will be treated as a suspension for a full trading day.

5.   **INTEREST**

5.01   The Borrower shall pay to the Lender interest at the Interest Rate on the Loan in accordance with the following provisions of this Clause.

5.02   Interest shall be paid as follows:-

(a)     Interest shall be fixed for the term of the Loan and the first Interest Period shall commence on the date of the Loan Completion Date;

(b)     Each Interest Period (other than the first) shall commence on the last day of the immediate preceding Interest Period;

(c)     Any Interest Period which would otherwise extend beyond the Maturity Date shall instead end on that date.  If any Interest Period commences or

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____ / _____

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

ends on the last Business Day of a calendar month or if there is no corresponding day in the calendar month in which it is to end, or if any Interest Period ends on a day which is not a Business Day, then the Interest Period shall be determined in accordance with Clause 7.03 or 7.04, as the case may be; and

(d)    Interest shall accrue from day to day, shall be calculated on the basis of the actual number of days elapsed and a 365 day year, including the first day of the period during which it accrues but excluding the last, and shall be paid in arrears on the relevant Interest Payment Date.  The certificate of the Lender as to the amount of interest payable on any relevant date shall be conclusive and binding on the Borrower in the absence of manifest error.

5.03    Without prejudice to the Lender's rights under Clause 8.01, if the Borrower fails to pay any sum on its due date for payment under this Agreement or in the case of any sum expressed to be payable on demand, forthwith upon any such demand for the payment thereof being made, the Borrower shall pay interest (compounded at daily intervals) on such sum from that date or in the case of outstanding interest on the Loan, interest for the relevant Interest Period up to the date of actual payment (as well after as before judgment), at the Default Rate.

## 6.    **REPAYMENT**

6.01    The Borrower shall not be permitted to repay all or any part of the Loan prior to the Maturity Date.

6.02    The Borrower shall send to the Lender a notice of intention to repay in full all amounts due under the Loan at least 60 days prior to the Maturity Date, substantially in the form appended hereto at Schedule 2. Upon receipt by the Lender of such notice of intention to repay, the Borrower shall immediately and automatically become personally liable for the repayment in full of all amounts due under the Loan.

## 7.    **PAYMENTS AND EVIDENCE OF DEBT**

7.01    On each date on which an amount is due from the Borrower hereunder, the Borrower shall before 6:00 p.m. in their residential time zone on the due date remit the amount in immediately available funds to the Lender in United States dollars by electronic bank transfer to the Lender's designated bank account, the details of which are as set out below:

**Account Name:**  ICG Asia Finance Limited
**Bank:** Hong Kong and Shanghai Banking Corporation (HSBC)
**Address:**  1 Queen's Road, Central, Hong Kong
**Swift Code:**  HSBCHKHHHKH
**Multi-Currency Bank Account #:** 640-143566-838

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____



The Lender reserves all rights to unilaterally vary the account to which payments are to be made, and in the event of such variance will notify the Borrower of the same in writing.

7.02    All payments to be made by the Borrower hereunder shall be made in full, without any set-off or counterclaim whatsoever and free and clear of any deduction or withholding. If at any time any law, enactment, regulation or regulatory requirement or any governmental authority, monetary authority or central bank requires the Borrower to make any deduction or withholding in respect of any present or future taxes, levies, imposts, duties, charges or fees of whatever nature, from any payment due hereunder, the sum due from the Borrower shall be increased to the extent necessary to ensure that after the making of such deduction or withholding, the Lender receives a net sum equal to the sum which it would have received had no such deduction or withholding been required to be made and the Borrower shall account to the appropriate authorities for the amounts so deducted or withheld.

7.03    Whenever any payment would otherwise be due or any Interest Period would otherwise end, on a day which is not a Business Day, the next following Business Day shall be substituted for such day unless such next following Business Day falls in the next calendar month in which case the immediately preceding Business Day shall be substituted therefor, and interest shall be adjusted accordingly.

7.04    If any Interest Period would otherwise commence or any payment would otherwise be due on the last Business Day of a calendar month or on a day for which there is no numerically corresponding day in the relevant calendar month, the last Business Day of such relevant calendar month shall, subject to Clause 7.03, be substituted therefor, and interest shall be adjusted accordingly.

7.05    The Lender shall maintain on its books in accordance with its usual practice a set of accounts recording the amounts from time to time owing by the Borrower hereunder. In any legal proceeding for the purposes of this Agreement, the entries made in such accounts shall, in the absence of manifest error, be conclusive and binding on the Borrower as to the existence and amounts of the obligations of the Borrower recorded therein.

7.06    A certificate of determination by the Lender as to the amount of any sum or rate payable by the Borrower hereunder or any other matter shall (save for manifest error) be conclusive and binding on the Borrower.

## 8.    <u>LOAN EVENT OF DEFAULT</u>

8.01    The Lender shall be entitled, by notice in writing to the Borrower, to terminate this Agreement if any of the following events or circumstances shall occur:-

(a)    the Borrower is in breach or in default of clause 6, 9 and 10 hereof, or 5 of the Share Pledge Agreement;

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

(b)  the Borrower fails to pay any sum payable by it under this Agreement when due, or where any sum is expressed to be payable on demand, forthwith upon any such demand for the payment thereof being made;

(c)  the Borrower fails to pay interest at the Default Rate within five (5) Business Days of the Interest Payment Date pursuant to Clause 5.03 hereof;

(d)  any representation or warranty or undertaking made or deemed to be made or repeated by the Borrower in or pursuant to this Agreement is or proves to be or to have been untrue, inaccurate or misleading in any material respect;

(e)  the Borrower is in breach of or in default under any material agreement, arrangement or undertaking to which it is a party or by which it may be bound and such breach or default has not been properly waived or remedied;

(f)  any other loan, guarantee, indemnity or other indebtedness or obligation for borrowed money of the Borrower becomes or is declared or becomes capable of being declared due prematurely or any loan or other credit facility is cancelled by reason of a default by the Borrower in its obligations in respect of the same, or the Borrower fails to make any payment in respect thereof on the due date for such payment (as extended by any period of grace permitted in respect thereof), or the security for any such other loan, guarantee, indemnity or other indebtedness or obligation for borrowed money becomes enforceable;

(g)  a petition is presented or a proceeding is commenced (and which is not discharged within thirty (30) Business Days) or an order is made by a competent court or other appropriate authority or any resolution shall be passed for bankruptcy, liquidation, winding up or dissolution or for the appointment of a liquidator, receiver, trustee or similar official of the Borrower of all or a substantial part of the assets of the Borrower otherwise than for the purposes of amalgamation, merger or re-construction (not involving or arising out of insolvency), the terms of which have previously been approved by the Lender;

(h)  an encumbrancer takes possession or a receiver or similar officer is appointed of the whole or any part of the assets, rights or revenues of the Borrower or a distress, execution, sequestration or other process is levied or enforced upon or sued out against any of the properties, assets, rights or revenues of the Borrower and shall not be discharged or stayed or in good faith contested by action within thirty (30) days thereafter;

(i)  the Borrower stops or suspends payment to creditors generally or is unable to or admits inability to pay its debts as they fall due or proposes or enters into any composition or other arrangement for the benefit of its creditors

ICG ASIA FINANCE LIMITED
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION

_____ / _____

generally or proceedings are commenced in relation to the Borrower under any law, enactment, regulation or procedure relating to reconstruction or readjustment of debts;

(j)     it becomes impossible or unlawful for the Borrower to fulfill any of its undertakings or obligations contained herein or for the Lender to exercise any of its rights, powers or remedies hereunder or thereunder;

(k)     this Agreement ceases to be in full force and effect;

(l)     all or any of the obligations of the Borrower under this Agreement become invalid, ineffective or unenforceable for any reason whatsoever; or

(m)     any other events occur or circumstances arise which, in the reasonable opinion of the Lender, gives reasonable grounds for believing that the Borrower is not likely to (or is likely to be unable to) perform or comply with any one or more of its material obligations under this Agreement or the Share Pledge Agreement and the Lender shall have given written notice of the same to the Borrower.

8.02    If a Loan Event of Default has occurred, the Lender shall have the right to enforce the Guarantee. Save as aforesaid, the Lender shall otherwise not have any recourse whatsoever against the Borrower for money lent or any sums due and payable under this Agreement.

9.      **REPRESENTATIONS AND WARRANTIES**

9.01    The Borrower hereby represents and warrants to the Lender that:-

(a)     the Borrower has power and authority and the legal capacity to raise the Loan and to execute, deliver and perform its obligations under this Agreement;

(b)     this Agreement constitutes or when executed will constitute the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms;

(c)     the Borrower is not in default in the payment of any principal of or interest on any indebtedness for borrowed money involving an amount equivalent to, or greater than 50% of the Loan or its equivalent in any other currency or currencies), or is not in breach of or in default under any other provision of any indenture, deed of trust, agreement or other instrument to which it is a party or by which it may be bound and under or subject to which any such indebtedness for borrowed money involving an amount equivalent to, or greater than 50% of the Loan (or its equivalent in any other currency or currencies) has been issued and is outstanding and no event, condition or act which with the fulfillment of any condition would constitute an event of default under any such indenture, deed of trust, agreement or other

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

instrument has occurred or is continuing which has not been properly waived or remedied thereunder;

(d)    the obligations of the Borrower under this Agreement are direct, general and unconditional obligations of the Borrower and shall rank at least pari passu with all its other present and future unsecured and unsubordinated indebtedness and other obligations (including contingent obligations) with the exception of obligations mandatorily preferred by law and not by contract;

(e)    the execution and delivery of, and the performance of the Borrower's obligations under, and in compliance with the provisions of, this Agreement will not contravene, conflict with or constitute a breach of, in any material manner, any agreements or arrangements or any restriction, undertaking, law or order applicable to or binding on the Borrower or result in the creation of or oblige the Borrower to create any lien, charge, encumbrance or other security interest on any of its assets, rights or revenues;

(f)    no event or circumstance has occurred and is continuing which constitutes or which with the fulfillment of any condition would constitute a Loan Event of Default;

(g)    the Borrower is not in breach of or in default under any law or order applicable to it or under any agreement or other instrument (whether in relation to indebtedness for borrowed moneys or otherwise) to which it is a party or by which it or any of its assets may be bound or affected or to which any other person is a party for whom the Borrower is responsible by reason of any guarantee, indemnity or law; and

(h)    no litigation, arbitration or similar proceeding is presently taking place, pending or to the Borrower's knowledge (having made all reasonable enquiries) threatened against it or any of its properties or assets which could have a material adverse change in the business, assets or condition of the Borrower.

9.02    The representations and warranties set out in Clause 9.01 shall be deemed to be repeated by the Borrower on each Interest Payment Date and the repayment date of the Loan as if made with reference to the facts and circumstances existing at each such date.


10.    **UNDERTAKINGS**

10.01    The Borrower hereby covenants and undertakes with the Lender that for so long as any Indebtedness remains outstanding, the Borrower will:-

(a)    upon becoming aware thereof, forthwith notify the Lender of any material litigation, arbitration or other proceeding which is brought against the Borrower which involve an amount in equivalent to, or greater than 50%

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

of the Loan (or its equivalent in other currency or currencies) or which, to its knowledge, is threatened against it;

(b)     promptly inform the Lender of any occurrence of which it becomes aware which constitutes or with the fulfillment of any condition would constitute a Loan Event of Default or prospective Loan Event of Default, or any other occurrence of which the Borrower becomes aware which might materially and adversely affect its ability to perform its obligations under this Agreement;

(c)     use all reasonable endeavours to obtain or cause to be obtained every authority, consent and approval and do, or cause to be done, all other acts and things which may, from time to time, be necessary or desirable for the continued due performance by the Borrower of all its obligations under this Agreement;

(d)     at all times comply with all material requirements (whether legal or otherwise) relating to the Borrower or the business of the Borrower.

## 11.    **INDEMNITIES**

11.01   The Borrower shall indemnify the Lender, without prejudice to any of its other rights under this Agreement against any losses, costs, charges or expenses which the Lender sustains or incurs as a consequence of (i) any default in payment of any amount payable under this Agreement when due, (ii) the occurrence of any Loan Event of Default, (iii) or (iii) any breach by the Borrower of the representations and warranties made hereunder**.**

11.02   In respect of 11.01 (i) **–** (ii), the certificate of the Lender setting out the computation of, and basis for, any such losses, costs, charges and expenses shall, in the absence of manifest error, be conclusive and binding on the Borrower.

## 12.    **AMENDMENT**

Any amendment or waiver of any provision of this Agreement and any waiver of any default under this Agreement shall only be effective if made in writing and signed by or on behalf of the party against whom the amendment or waiver is asserted.

## 13.    **COSTS AND EXPENSES**

Each party shall bear its own costs and expenses in respect of this Agreement and any agreements and documents ancillary to it.

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

14. **MISCELLANEOUS**

14.01   This Agreement shall be binding on and enure for the benefit of the successors or assigns of the parties respectively.  None of the parties hereto may assign the benefit of any provision in this Agreement without the prior written consent of all the other party except to its Affiliate.

14.02   No announcement or circular in connection with this Agreement or any matter arising therefrom shall be made or issued by or on behalf of any of the parties hereto without the prior written approval of the other party, such approval not to be unreasonably withheld or delayed.  The restrictions in this Clause shall not apply to any statement which is required to be made by law or in accordance with the rules of the Stock Exchange or any competent regulatory authority.

14.03   Nothing in this Agreement shall create or be deemed to create a partnership or the relationship of principal and agent or employer and employee between any of the parties and no party shall be responsible for the acts or omissions of the employees or representatives of the other party.

14.04   The illegality, invalidity or unenforceability of any part of this Agreement shall not affect the legality, validity or enforceability of any other part of this Agreement.

14.05   This Agreement together with any documents referred to herein or therein constitute the whole Agreement between the parties hereto and no variation thereof shall be effective unless made in writing signed by all parties hereto or their duly authorised representatives.

14.06   This Agreement may be executed in one or more counterparts each of which shall be binding on each party by whom or on whose behalf it is so executed, but which together shall constitute a single instrument.  For the avoidance of doubt, this Agreement shall not be binding on any party hereto unless and until it shall have been executed by or on behalf of all persons expressed to be party hereto.

14.07   The failure of the Lender at any time or times to require performance by the Borrower of any provision of this Agreement shall in no way affect the right of the Lender to require performance of that or any other provision and any waiver by the Lender of any breach of a provision of this Agreement shall not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any other right under this Agreement.

14.08   All payments to be made under this Agreement shall be paid without set off or counterclaim or any restriction and condition and free and clear of any taxation or any deductions or withholdings of any nature.  If any deduction or withholding (on account of taxation or otherwise) is required by law to be made, the payor shall pay such additional amount as may be necessary to ensure that the payee receives the full amount due as if no deduction or withholding had been made.

14.09   Time shall be of the essence of this Agreement.

14

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____ / _____

14.10   The Borrower has been advised to take independent legal advice before signing this Agreement.


15.   **NOTICES**

15.01   Any notice, claim or demand requiring to be served under or in connection with this Agreement shall be in writing and signed by or on behalf of the party giving it.  The notice, claim or demand shall be sufficiently given or served if delivered to the address and attention of the relevant party set out in Clause 15.02, or as otherwise notified from time to time hereunder with specific reference to this Agreement.  Any such notice, claim or demand shall be delivered by hand or facsimile transmission or email or sent by pre-paid first class post and if delivered by hand or sent by facsimile transmission or email shall conclusively be deemed to have been given or served at the time of despatch or twenty four (24) hours after in the case of international service, and if sent by post shall conclusively be deemed to have been received seven (7) days from the time of posting.  All notices under this Agreement shall be in the English language.

15.02   The addresses of the parties for the purpose of Clause 15.01 are as follows :-

The Borrower :-
11 Vale View Grove, The Park; Cabinteely; Dublin 18; Ireland
**For the attention of**
Mr. Philip Peter Carney
Telephone: +353 872485747
Email: philip@b2es.net

The Lender :-
ICG Asia Finance Limited
8/F, CRE Building; 303 Hennessy Road; Wan Chai, Hong Kong
**For the attention of**
Ms. Arielle Guterman
Fax No : +852 2817 9266
Email : arielle.guterman@icg.asia

15.03   Any party may change the address (or other details) to which notices can be sent by giving written notice of such change of address (or details) to the other parties with specific reference to this Agreement and in the manner herein provided for giving notice.


16.   **GOVERNING LAW**

16.01   This Agreement shall be governed by and construed in accordance with the laws of Hong Kong.

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

16.02   The parties shall first settle through mediation any claim or dispute arising out of or in connection with the existence, validity, interpretation, performance or termination of this Agreement.  Mediation shall be conducted in accordance with the Mediation Rules of the Law Society of Hong Kong in force at this time.  Either party may initiate mediation by delivering a written request for mediation to the other party with copies to the Law Society of Hong Kong ("Law Society"). There shall be one (1) mediator who shall be a Law Society of Hong Kong Accredited General Mediator.  The language to be used in mediation shall be English.  The place of mediation shall be in Hong Kong.

16.03   Each of the parties hereby submits to the exclusive jurisdiction of the Courts of Hong Kong in relation to any claim or dispute, and irrevocably waives any objection which it may now or hereafter have to the Courts of Hong Kong being nominated as the forum to hear and determine any such claim or dispute and agrees not to claim that any such Court is not a convenient or appropriate forum.

16.04   Notwithstanding the submission of any claim or dispute pursuant to this Clause to mediation or judicial proceedings, the parties shall continue to exercise their remaining respective rights, and fulfil their remaining respective obligations under this Agreement, except insofar as it/they relate(s) directly to those matters in dispute.

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

IN WITNESS WHEREOF the parties have caused this Agreement to be duly executed the date first above written.

SIGNED by **Philip Peter Carney**        )
in the presence of:-                      )
                                          )
                                          )
                                          )

SIGNED by **Issac Lee**                   )
for an on behalf of the Lender            )
in the presence of:-                      )
                                          )
                                          )

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____ / _____

**INTERNATIONAL CAPITAL GROUP**
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

## SCHEDULE 1: LIST OF ISSUERS & STOCK EXCHANGES

**(All terms not defined herein shall have the same meaning ascribed to them in the Loan Agreement dated 8 March 2012 of which this Schedule is a part and is incorporated therein by reference (the "Loan Agreement").)**

| Issuer | Stock Exchange | Symbol | Share Qty |
|--------|----------------|--------|-----------|
| ACM Development Regional Markets Portfolio B | | XADBX | 5,509.203 |
| Akamai Technologies Inc | NASDAQ GS | AKAM | 663.000 |
| Amazon Com Inc | NASDAQ GS | AMZN | 218.000 |
| AMC Networks INC-A | NASDAQ GS | AMCX | 96.000 |
| Amgen INC | NASDAQ GS | AMGN | 206.000 |
| Anadarko Petroleum Corp | NYSE | APC | 265.000 |
| Anheuser-Busch Inbev Spons | NYSE | BUD | 439.000 |
| Apache Corp | NYSE | APA | 355.000 |
| Apple Inc | NASDAQ GS | AAPL | 43.000 |
| Autodesk Inc | NASDAQ GS | ADSK | 289.000 |
| Bank Deposit Program | | #BDP | 32,464.420 |
| Bed Bath & Beyond | NASDAQ GS | BBBY | 560.000 |
| BGF Global Allocation CL | | GLMLA | 4,435.200 |
| Biogen Idec Inc | NASDAQ GS | BIIB | 594.000 |
| Blackrock Inc | NYSE | BLK | 171.000 |
| Broadcom Corp CL A | NASDAQ GS | BRCM | 1,065.000 |
| Cablevision Systems Corp | NYSE | CVC | 398.000 |
| Cameron International Corp | NYSE | CAM | 450.000 |
| Celgene Corp | NASDAQ GS | CELG | 703.000 |
| Cisco Sys Inc | NASDAQ GS | CSCO | 1,725.000 |
| Citrix Systems Inc | NASDAQ GS | CTXS | 90.000 |
| CME Group Inc | NASDAQ GS | CME | 61.000 |
| Coca-Cola Co | NYSE | KO | 440.000 |
| Comcast Corp CL A-SPL | NASDAQ GS | CMCSK | 2,205.000 |
| Covidien PLC | NYSE | COV | 130.000 |
| CREE Inc | NASDAQ GS | CREE | 234.000 |
| CVS Caremark Corp | NYSE | CVS | 860.000 |
| Deere & Co | NYSE | DE | 106.000 |
| Directv CL A | NASDAQ GS | DTV | 140.000 |
| Dolby Laboratories Inc | NYSE | DLB | 184.000 |
| Eaton Corp | NYSE | ETN | 500.000 |
| Ebay Inc | NASDAQ GS | EBAY | 1,180.000 |
| EMC Corp Mass | NYSE | EMC | 562.000 |
| EOG Resources Inc | NYSE | EOG | 151.000 |
| Express Scripts Inc Common | NASDAQ GS | ESRX | 301.000 |
| Fluor Corp New | NYSE | FLR | 150.000 |
| Forest Laboratories Inc | NYSE | FRX | 485.000 |
| Franklin Income Fund | | | 16,232.507 |
| Freeport McMoran Copper & Gold | NYSE | FCX | 196.000 |
| General Electric Co | NYSE | GE | 1,445.000 |

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____/_____

## INTERNATIONAL CAPITAL GROUP
INNOVATIVE · GLOBAL · INVESTMENTS

ICG-Carney
8 March 2012

| | | | |
|---|---|---|---|
| Google Inc | NASDAQ GS | GOOG | 60.000 |
| Home Depot Inc | NYSE | HD | 830.000 |
| Human Genome Sciences Inc | NASDAQ GS | HGSI | 675.000 |
| Immunogen Inc | NASDAQ GS | IMGN | 340.000 |
| Intuit Inc | NASDAQ GS | INTU | 355.000 |
| Isis Parmaceuticals | NASDAQ GS | ISIS | 285.000 |
| Johnson & Johnson | NYSE | JNJ | 523.000 |
| Juniper Networks Inc | NYSE | JNPR | 900.000 |
| L3 Communications Hldgs Inc | NYSE | LLL | 135.000 |
| Liberty Media Corp Liberty Cap LA A | NASDAQ GS | LMCA | 110.000 |
| Liberty Media Hldgs Corp | NASDAQ GS | LINTA | 430.000 |
| MFS Merdian Emerging Markets Debt FD B1 | | | 4,031.625 |
| MSF Meridian High Yield B1 | | XAYBX | 3,921.569 |
| Microsoft Corp | NASDAQ GS | MSFT | 19,791.000 |
| Monsanto Co New | NYSE | MON | 335.000 |
| Nasdaq OMC Group Inc | NASDAQ GS | NDAQ | 457.000 |
| National Oil Well Varco Inc | NYSE | NOV | 150.000 |
| Netapp Inc | NASDAQ GS | NTAP | 472.000 |
| Niche Group PLC | AIM | NGP | 200,000.000 |
| Nike Inc CL B | NYSE | NKE | 201.000 |
| Nucor Corp | NYSE | NUE | 190.000 |
| Oracle Corp | NASDAQ GS | ORCL | 885.000 |
| Pall Corp | NYSE | PLL | 200.000 |
| Pepsico Inc | NYSE | PEP | 428.000 |
| Procter & Gamble Co | NYSE | PG | 364.000 |
| Qualcomm Inc | NASDAQ GS | QCOM | 274.000 |
| Sandisk Corp | NASDAQ GS | SNDK | 220.000 |
| Schlumberger Ltd | NYSE | SLB | 317.000 |
| Schwab Charles Corp | NYSE | SCHW | 1,483.000 |
| Seagate Technology PLC | NASDAQ GS | STX | 820.000 |
| Te Connectivity Ltd-CHF | NYSE | TEL | 375.000 |
| Templeton Global Balanced Fund Class B | | | 8,058.608 |
| Templeton Global Bond Fund | | | 5,562.859 |
| Texas Instruments Inc | NASDAQ GS | TXN | 1,059.000 |
| Thermo Fisher Scientific Inc | NYSE | TMO | 435.000 |
| Tyco Intl Ltd CHF | NYSE | TYC | 340.000 |
| United Parcel Service CL B | NYSE | UPS | 338.000 |
| UnitedHealth Group Inc | NYSE | UNH | 600.000 |
| Vertex Pharmaceuticals Inc | NASDAQ GS | VRTX | 150.000 |
| Visa Inc Com CL A | NYSE | V | 355.000 |
| Walt Disney Co | NYSE | DIS | 725.000 |
| Weatherford International Ltd-CHF | NYSE | WFT | 810.000 |
| Western Asset US Money Market Fund A Dist (D) | | #SBOM | 6,296.240 |

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____ / _____



## SCHEDULE 2: NOTICE OF INTENTION TO REPAY

**(All terms not defined herein shall have the same meaning ascribed to them in the Loan Agreement dated 8 March 2012 of which this Schedule is a part and is incorporated therein by reference (the "Loan Agreement").)**

[DATE]

ICG Asia Finance Limited
8/F, CRE Building;
303 Hennessy Road;
Wan Chai;
Hong Kong

Dear Sirs,

Pursuant to Clause 6.02 of the Loan Agreement, I hereby give notice of my intention to repay in full all amounts due under the Loan as at the Maturity Date.

I acknowledge and confirm that in the event I am unable to repay in full all amounts due under the Loan as at the Maturity Date, the Lender will have, in addition to its rights and remedies under the Loan Agreement, full recourse against any real, personal, tangible or intangible assets of mine, and may pursue any legal or equitable remedies that are available to it.

Words and expressions as defined in the Loan Agreement shall have the same meaning when used in this Notice of Intention to Repay.

Yours faithfully,

_____
Philip Peter Carney

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____ / _____

INTERNATIONAL CAPITAL GROUP
INNOVATIVE • GLOBAL • INVESTMENTS

ICG-Carney
8 March 2012

### SCHEDULE 3: LOAN ADDENDUM

| | |
|---|---|
| **Collateral:** | shares in the capital of the companies listed at Schedule 1 |
| **Estimated Collateral Value:** | US$3,168,051 |
| **Loan to Value:** | 70% |
| **Estimated Loan Amount:** | US$2,217,636 |
| **Origination Fee:** | (US$110,882) |
| **Net Funds to Borrower:** | US$2,106,754 |
| **Minimum Collateral Level (per Share):** | 105% of the Loan Amount |
| **Top-up Level (per Share):** | 115% of the Loan Amount |
| **Auto-Default Level (per Share):** | 95% of the Loan Amount |
| **Other Comments:** | |

**ICG ASIA FINANCE LIMITED**
8/F, CRE Building / 303 Hennessy Road / Wan Chai, Hong Kong
+852 2817 9882 T / +852 2817 9266 F / www.icgasia.com
**STRICTLY CONFIDENTIAL & NOT FOR DISTRIBUTION**

_____ / _____

# EXHIBIT B

## GENERAL RELEASE

This General Release ("General Release") is executed and delivered effective as of November   , 2015, by Philip Carney ("Releasor"), to and in favor of, and for the benefit of INTERNATIONAL CAPITAL GROUP (ICG), ICG ASIA FINANCE LIMITED (ICGAFL) AND MICHAEL MACCIA, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE FACILITATOR, AS DESCRIBED HEREIN, (collectively "Releasees").

Releasor, intending to be legally bound hereby, has executed and delivered this General Release in exchange for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in accordance with and as a condition to that certain executed Loan Maturity Statement dated November 17, 2015 relating to Loan Reference Number ICGAF-US-12-0009 (the "Loan"), which statement, in its executed form, is attached hereto as Exhibit A and incorporated by reference herein.

     1.    <u>Incorporation of Recital</u>.   The foregoing recital is hereby incorporated by reference into this General Release.

     2.    <u>General Release</u>.   Releasor, on behalf of himself and his successors, assigns, affiliates, heirs, executors, personal representatives and administrators ("<u>Releasor Associated Parties</u>"), hereby generally, irrevocably, absolutely, unconditionally, fully, finally and completely releases and forever discharges the Releasees (as defined below) from, and hereby irrevocably, absolutely, unconditionally and completely waives and relinquishes, all past, present and future claims, demands, costs, expenses, actions, causes of action, proceedings, orders, judgments, obligations, contracts, agreements, debts and liabilities of whatsoever kind or nature, whether known or unknown, suspected or unsuspected, whether at law or in equity ("<u>Claims</u>"), that the Releasor may have had in the past, may now have or may have in the future against the Releasees, including but not limited to those Claims that arise out of or relate to, directly or indirectly, to the execution, performance and repayment of the Loan including the authorization of Releasor to ICG and/or ICGAFL to withhold the Facilitation Fee (as defined herein) from the net loan prepayment proceeds and to pay said fee directly to the Facilitator (the "<u>Released Claims</u>").

**This General Release shall become fully effective and enforceable upon the payment of the Loan, according to the terms set forth in Paragraph 5(e) below.**

     3.    <u>Releasees</u>. The term "<u>Releasees</u>" shall mean and include: (i) ICG (ii) ICGAFL (iii) Michael Maccia individually and in his representative capacity on behalf of the Facilitator (iv) any other direct and indirect subsidiaries of the Releasees and (v) the past, present and future managers, directors, officers, members, partners, equity holders, principals, employees, agents, attorneys, accountants, advisors, consultants, representatives, successors and assigns of each person and entity identified or otherwise referred to in clauses (i) through (iv) of this sentence and additionally as well, Archer & Greiner, P.C. to the extent that it will wire the first payment toward the Net Loan Proceeds from its Attorney Trust Account on behalf of ICG or its affiliates.

1

4.    <u>Covenant Not to Sue</u>.  Releasor hereby irrevocably covenants and agrees not to, directly or indirectly, bring any claim, suit or action arising out of, related to, in respect of or in connection with the Released Claims.

5.    <u>Representations and Warranties</u>.    Releasor represents and warrants to the Releasees that:

a.    Releasor has not assigned, transferred, conveyed or otherwise disposed of any Released Claim against any of the Releasees, or any direct or indirect interest in any such Released Claim, in whole or in part;

b.    Releasor has all requisite power and authority (and, if applicable, legal capacity) to execute and deliver this General Release;

c.    This General Release is a valid and binding obligation of Releasor, and is enforceable against Releasor in accordance with its terms; and

d.    Releasor is entering into this General Release knowingly, voluntarily and with full knowledge of its significance and has been advised to consult with an attorney, and has done so.

e.    Releasor acknowledges that the repayment of the Loan was arranged through a facilitator (the "Facilitator"), absent whose efforts the Loan would remain outstanding as of the date of this General Release.  Releasor represents and agrees that the facilitation fee of One Hundred Sixty One Thousand Four Hundred Eighty Nine and twelve one hundredths ($161,489.12 USD) Dollars, (the "Facilitation Fee") has been earned, is reasonable and is appropriate under the circumstances.  Accordingly, notwithstanding the execution of Exhibit A, Releasor specifically authorizes ICG and/or ICGAFL to withhold the $161,489.10 Facilitation Fee from the balance of the $1,614,891.20 debt to Releasor, and to pay the Facilitation Fee directly to the Facilitator.  As a result, by this document, Releasor authorizes IC and/or ICGAFL to wire the sum of One Million Four Hundred Fifty Three Thousand Four Hundred Two and ten one hundredths (1,453,402.10 USD) Dollars (the "Net Loan Proceeds") to the Releaser in full and final satisfaction of the repayment of the Loan, pending wire instructions or other directions from Releasor as to the distribution of the Net Loan Proceeds.

f.    Releasor acknowledges that the Net Loan Proceeds shall be paid by or on behalf of ICG or its affiliates in four installments of Three Hundred Sixty Three Thousand Three Hundred Fifty and fifty two one hundredths ($363,350.52 USD) Dollars on the following dates: December 1, 2015, January 15, 2016, March 1, 2016, April 15, 2016.  Payments will be wired directly to Releasor from Releasees except that the first e-mail will be wired from the Attorney Trust Account of Archer & Greiner, P.C. merely as accommodation to Releasors.

g.    Releasor further acknowledges that since a portion of the Net Loan Proceeds will be deposited in an attorney trust account in the State of New Jersey, that the firm is acting solely as an escrow agent and that this document shall serve as Releasor's explicit authorization to make such disbursement of that portion of the Net Loan Proceeds in the Attorney Trust Account as he may direct.

2

h.    Releasor, in forbearing from insisting on receipt of the Net Loan Proceeds in one single payment also acknowledges and confirms that the delivery of this Release in advance of all payments is one of convenience but that the Release does not become effective until the last of the four payments is received by Releasor.

6.    <u>Indemnification</u>.  Without in any way limiting any of the rights or remedies otherwise available to any Releasee, Releasor shall indemnify and hold harmless each Releasee and from and against any damages or losses (including reasonable attorneys' fees and expenses) that are directly or indirectly suffered or incurred at any time by such Releasee, or to which such Releasee otherwise becomes subject at any time, and that arises out of or relates to, (a) any failure on the part of the Releasor to observe, perform or abide by, or any other breach by Releasor of, any restriction, covenant, obligation, representation, warranty or other provision contained herein, or (b) the assertion or purported assertion of any of the Released Claims by Releasor or any of the Releasor Associated Parties.

7.    <u>Governing Law</u>.  This General Release shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws principles.

8.    <u>Jurisdiction; Service of Process</u>.  Releasor hereby (a) hereby irrevocably submits to the exclusive jurisdiction of the courts of the State of New York or the United States District Court for the Southern District of New York for the purpose of any and all actions, suits or proceedings arising in whole or in part out of, related to, based upon or in connection with this agreement or any transaction contemplated hereby, (b) hereby waives, and agrees not to assert, by way of motion, as a defense or otherwise, in any such action, any claim that he, she or it is not subject personally to the jurisdiction of the above-named courts, that his or its property is exempt or immune from attachment or execution, that any such action brought in one of the above-named courts should be dismissed on grounds of forum non conveniens, should be transferred to any court other than one of the above-named courts, or should be stayed by reason of the pendency of some other proceeding in any other court other than one of the above-named courts, or that this General Release or the subject matter hereof may not be enforced in or by such court, and (c) hereby agrees not to commence any such action other than before one of the above-named courts nor to make any motion or take any other action seeking or intending to cause the transfer or removal of any such action to any court other than one of the above-named courts whether on the grounds of inconvenient forum or otherwise. Releasor hereby (x) consents to service of process in any such action in any manner permitted by New York law, (y) agrees that service of process made in accordance with clause (x), shall constitute good and valid service of process in any such action and (z) waives and agrees not to assert (by way of motion, as a defense, or otherwise) in any such action any claim that service of process made in accordance with clause (x) or (y) does not constitute good and valid service of process.

9.    <u>Binding Effect</u>.  This General Release shall be binding upon the parties hereto and their respective successors and assigns.

10.    <u>Entire Agreement</u>.  This General Release contains the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes and

3

113411712v1

merges all prior discussions, proposals, representations, negotiations and communications, oral or written, with respect to the subject matter of this General Release.

11.    <u>Waiver</u>.  No failure on the part of any person to exercise any power, right, privilege or remedy under this General Release, and no delay on the part of any person in exercising any power, right, privilege or remedy under this General Release, shall operate as a waiver of such power, right, privilege or remedy; and no single or partial exercise of any such power, right, privilege or remedy shall preclude any other or further exercise thereof or of any other power, right, privilege or remedy.

12.    <u>Expenses</u>.  If any proceeding relating to this General Release, or the enforcement of any provision of this General Release, is brought by or against the Releasor, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements to the extent actually incurred (in addition to any other relief to which the prevailing party may be entitled).

13.    <u>Further Action and Documents</u>.  Upon reasonable request following execution of this General Release, either party will take further action, and execute, or cause to be executed, and will deliver to the other, such other and further documents, as may be necessary to effectively consummate this General Release and carry out its terms.

14.    <u>Waiver of Trial by Jury</u>.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, RELEASOR, FOR ITSELF AND THE RELEASOR ASSOCIATED PARTIES, HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS IT OR ANY OF THEM MAY HAVE TO TRIAL BY JURY OF ANY ISSUE ARISING IN CONNECTION WITH ANY ACTION BROUGHT TO ENFORCE THIS GENERAL RELEASE OR OTHERWISE RELATING HERETO.

IN WITNESS WHEREOF, the Releasor has executed this General Release as of the date first above written.

Witness:

_____    _____
Name                                                      Philip Carney

4

# EXHIBIT A



# INTERNATIONAL CAPITAL GROUP

INNOVATIVE ▪ GLOBAL ▪ INVESTMENTS

**LOAN MATURITY STATEMENT**

| | | | |
|---|---|---|---|
| **From:** | ICG Asia Finance Limited | **Date:** | November 17, 2015 |
| **Borrower:** | Phillip Carney | **Loan Ref:** | ICGAF-US-12-0009 |
| | | | (ITS-12-0009) |

In order to satisfy your debt with ICGAF you have agreed to sell your portfolio. This will pay your principal balance of $1,449,600.00.

| Loan Ref: ICGAF-US-12-0008 | |
|---|---:|
| Loan Closing Date: | June 12, 2012 |
| Loan Maturity Date: | June 11, 2015 |
| Collateral Shares: | MSFT:US |
| No of Collateral Shares: | 23,281 |
| Price Per Share at Maturity: | $46.44 |
| Total Share Value: | $1,081,169.64 |
| Collateral Shares: | GE:US |
| No of Collateral Shares: | 35,952 |
| Price Per Share at Maturity: | $27.51 |
| Total Share Value: | $989,039.52 |
| Collateral Shares: | DIA:US |
| No of Collateral Shares: | 5,503 |
| Price Per Share at Maturity: | $180.68 |
| Total Share Value: | $994,282.04 |
| Loan Amount: | $1,449,600.00 |
| Total Value of Shares at Maturity: | $3,064,491.20 |

I hereby agree to sell my portfolio in order to fully satisfy my loan with ICGAF, in return I agree to accept a cash settlement of $1,614,891.20.

———————————————

Phillip Carney

Room 2002, 20/F, Fairmont House, 8 Cotton Tree Drive, Central, Hong Kong
(T) +852 2817 9882/ (F) +852 2817 9266

