```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

PHILIP CARNEY,

                        Plaintiff,                MEMORANDUM AND ORDER

            - against -                           21 Civ. 183 (NRB)

INTERNATIONAL CAPITAL GROUP, ICG ASIA
FINANCE LIMITED, ICG USA, LLC, "ABC
CORPORATIONS" 1-10 (NAMES FICTITIOUS),
LARRY RUSSEL, and BRIAN NORD,

                        Defendants.

----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Philip Carney ("plaintiff") brought this action against defendants International Capital Group, ICG Asia Finance Limited, ("ICG Asia"), ICG USA, LLC, ("ICG USA"), "ABC Corporations" 1-10, and Larry Russel and Brian Nord, (together the "individual defendants" appearing pro se), for breach of a November 2015 installment payment agreement (the "General Release") related to an earlier March 2012 secured loan transaction. The Court previously granted a default judgment against the corporate defendants for breach of the General Release given their failure to make the last of four installment payments. See ECF No. 61. Pending before the Court is plaintiff's motion for partial summary judgment seeking to pierce the corporate veil and hold the individual defendants liable for the same unpaid installment

1

payment.  For the reasons set forth below, plaintiff's motion for partial summary judgment is denied and the remaining counts against the individual defendants are dismissed.

**BACKGROUND**

According to plaintiff's complaint, on March 8, 2012, he entered into a secured loan agreement in the sum of $2,217,636 with ICG Asia, see ECF No. 5 ("Compl.") ¶ 10, the repayment of which he guaranteed by pledging his stock portfolio in a "Share Pledge Agreement" with another ICG entity, ICG Investment Limited, see Compl., Ex. A at 4.  At that time, plaintiff was aware that the individual defendants were principals of various ICG entities and that they were "engaged in stock-based loans with customers under the ICG banner."  ECF No. 63 ("Mot.") at 11.

Upon maturity of the loan in 2015, "$1,449,600 remained outstanding."  Compl. ¶ 12.  Thereafter, plaintiff, through his agent, negotiated the General Release with International Capital Group and IGC Asia to satisfy his debt balance and to receive four installment payments and a facilitation fee paid to his agent's designee.  Compl. ¶¶ 13-14; Compl. Exs. B §§ 5(e),(f), and B-A.  At the time, plaintiff's stock portfolio was valued at $3,064,491.20.  Compl. ¶ 14. Attached to the General Release was a document entitled "Loan Maturity Statement," which included the following language: "In order to satisfy your debt with [ICG Asia] you have agreed to sell your portfolio.  This will pay your

2

principal balance of $1,449,600.00." Compl. Ex. B-A at 2. Further, plaintiff "agree[d] to sell [his] portfolio in order to fully satisfy [his] loan with [ICG Asia], [and] in return [he] agree[d] to accept a cash settlement of $1,614,891.20."[1] Id. In other words, for reasons unexplained and difficult to comprehend, plaintiff transferred his entire stock portfolio, worth over $3 million, to expunge a loan for half of its value and receive four cash payments over time. Plaintiff also explicitly acknowledged that "the repayment of the [l]oan was arranged through a facilitator . . ., absent whose efforts the [l]oan would remain outstanding," and authorized the withholding and direct payment of a facilitation fee of $161,489.12. Compl. Ex. B § 5(e). To make the first three payments, defendant Nord personally guaranteed short-term loans between ICG USA and Steelworks Investments, Limited.[2] Compl. ¶ 19; Mot. at 13. The corporate defendants never made the fourth installment payment to plaintiff, Compl. ¶ 21, and ICG eventually went out of business, ECF Nos. 19 ¶¶ 2-4, 28 ¶¶ 2-4.

---

[1] There is simply no explanation as to why plaintiff did not sell a sufficient number of shares to satisfy his debt obligation to ICG Asia. However, it is clear that he must have at least transferred the stock to ICG Asia to liquidate his debt.

[2] According to the Complaint, plaintiff's agent was "a member of Steelworks Investments, Limited." Compl. ¶ 13.

3

On January 8, 2021, plaintiff filed this action, see ECF No. 1; see also Compl.,³ participated in discovery with the individual defendants, see ECF Nos. 30, 35, 48, and obtained a default judgment against the corporate defendants, see ECF No. 61.

Plaintiff now brings the instant motion for partial summary judgment, seeking to pierce the corporate veil to hold the individual defendants liable for the failure to make the fourth installment payment. See ECF Nos. 62-66.⁴ In support of his motion, plaintiff submitted a Local Rule 56.1 Statement, ECF No. 63-1 ("Pl. 56.1"), and a declaration, ECF No. 65, that tell a very different story than the one pled in the complaint. In these submissions, plaintiff now says that "[u]pon maturity of the [l]oan, [he] was advised the balance owed to him, in the amount of $1,614,819.20, could not be paid in full because of 'short term' cash flow issues with ICG and ICG Asia. Accordingly, on or about November 17, 2015, the [l]oan matured, and [p]laintiff agreed to sell his portfolio to the Corporate Defendants in exchange for a cash settlement of $1,614,891.20. . . ."⁵ Pl. 56.1 ¶ 63 (emphasis

---

³ The Complaint alleged six causes of action: (1) breach of contract of the General Release; (2) breach of the duty of good faith and fair dealing; (3) fraud; (4) a book account claim; (5) fraudulent conveyance; and (6) a veil-piercing, alter ego, and undercapitalization claim.

⁴ Plaintiff filed a certificate of service noting that the motion was served on defendants, see ECF No. 67, and, as directed by this Court, see ECF No. 70, has complied with his Rule 56.2 obligation to provide notice to pro se litigants who oppose a motion for summary judgment, see ECF Nos. 71-72. The Court also provided the individual defendants twenty-one days from the filing of the Rule 56.2 notices to oppose the motion. See ECF No. 70.

⁵ While the General Release makes a single reference to a "$1,614,891.20 debt to Releasor," Compl., Ex. B § 5(e), the Court notes that plaintiff's complaint

added).  Plaintiff's declaration also asserts that Section 5(e) of the General Release "requires ICG and ICG Asia to pay a $161,489.12 'Facilitation Fee' to me or, in lieu of paying me directly, to a 'Facilitator.'"[6]  ECF No. 65 ¶ 6.  The individual defendants have not filed opposition papers.

## LEGAL STANDARDS[7]

### A. Summary Judgment

The standards applicable to a motion for summary judgment under Federal Rule of Civil Procedure 56(a) are well established and will not be repeated.  However, when a summary judgment motion in a pro se case is unopposed, as here, the motion may be granted only if: (1) the party appearing pro se has received adequate notice that failure to file any opposition may result in the entry of summary judgment without trial; and (2) the Court is satisfied

---

clearly pled that at maturity, there was a "$1,449,600 outstanding balance on the [l]oan" and any sum owed to plaintiff was a result of his sale of his stock portfolio, Compl. ¶ 14.

[6] In another contradiction between the General Release and plaintiff's declaration, plaintiff now pursues the Facilitation Fee that he gave up in the General Release.  See Compl., Ex. B § 5(e) ("Releasor specifically authorizes ICG and/or [ICG Asia] to withhold the $161,489.10 Facilitation Fee from the balance of the $1,614,891.20 debt to Releasor, and to pay the Facilitation Fee directly to the Facilitator.  As a result, by this document, Releasor authorizes [ICG] and/or [ICG Asia] to write the sum of One Million Four Hundred Fifty Three Thousand Four Hundred Two and ten one hundredths ($1,453,402.10 USD) Dollars . . . to the Releas[o]r in full and final satisfaction of the repayment of the loan. . . .").

[7] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), granting district courts original jurisdiction over cases between citizens of a state and citizens or subjects of a foreign state in which the amount in controversy exceeds $75,000.  Here, plaintiff is a citizen of Ireland, Compl. ¶ 1, and the individual defendants reside in Tennessee and Indiana, see ECF Nos. 18, 27.  Moreover, the parties to the General Release agreed to submit their disputes to New York courts or the Southern District of New York. Compl., Ex. B at ¶ 8.

5

that "the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." Champion v. Artuz, 76 F. 3d 483, 486 (2d Cir. 1996).  Thus, if a party does not respond, summary judgment will be entered against him, if appropriate.  See Fed. R. Civ. P. 56(e); Graham v. Lewinski, 848 F. 2d 342, 344-45 (2d Cir. 1988).  "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F. 3d 241, 244 (2d Cir. 2004).

**B. Veil Piercing Under New York Law**

Regardless of the Court's deep skepticism about the claims asserted in this case due to the glaring inconsistencies between the Complaint and the papers on this motion, given the narrow issue of veil-piercing before us, we need not resolve those inconsistencies.

New York courts disregard the corporate form "reluctantly," given that "New York law . . . allows individuals to incorporate for the very purpose of avoiding personal liability."[8]  Gartner v.

---

[8] Here, the General Release between the plaintiff and the corporate defendants includes a New York choice of law provision. Compl., Ex. B at ¶ 7. To no particular end, plaintiff argues that courts are split on whether New York's

6

Snyder, 607 F.2d 582, 586 (2d Cir. 1979). To pierce the corporate veil under New York law, a party must establish (1) "that the owner exercised complete domination over the corporation with respect to the transaction at issue" and (2) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997) (internal quotation marks omitted). "While complete domination of the corporation is the key to piercing the corporate veil, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward the party seeking piercing is required." Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997). However, "courts will disregard the corporate form, or . . . pierce the corporate veil, whenever necessary to prevent fraud or to achieve equity."

---

choice of law rules, which would require applying the state law from the state of incorporation of the entities, here Delaware and Hong Kong, see Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995), or New York substantive law applies, see Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 137 (2d Cir. 1991). As to the choice between New York and Delaware law, under New York's choice-of-law rules, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006) (quoting In re Allstate Ins. Co., 81 N.Y.2d 219, 223 (N.Y. 1993)). "[T]he standards for piercing the corporate veil are substantially similar under Delaware and New York law." Wausau Bus. Ins. Co. v. Turner Const. Co., 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001). As to Hong Kong law, during the course of this litigation, the parties have never indicated that the foreign law of Hong Kong applies nor has plaintiff endeavored to proffer evidence of Hong Kong law. Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."). Thus, given the provision in the General Release, the similarity between New York and Delaware law, and the reliance on New York law in plaintiff's motion papers, the Court will apply New York law.

7

Matter of Morris v. New York State Dep't of Taxation & Fin., 82 N.Y. 2d 135, 140 (N.Y. 1993) (internal quotation marks and citation omitted). The ultimate decision to pierce the corporate veil "will necessarily depend on the attendant facts and equities" at issue. Id. at 141.

The Second Circuit has articulated a series of factors that a court may consider in determining whether there is complete domination over a corporation at issue:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Wm. Passalacqua Builders, 933 F.2d at 139. The Second Circuit has also noted that in small, privately-held businesses "the trappings of sophisticated corporate life are rarely present" and "preoccupation with questions of structure, financial and accounting sophistication or dividend policy or history would inevitably beckon the end of limited liability for small business

owners." William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 601 (2d Cir. 1989). In addition, with respect to piercing the corporate veil against individuals, courts especially consider evidence of financial commingling. See Am. Fuel Corp., 122 F.3d at 132.

Moreover, "New York law will not allow the corporate veil to be pierced in the absence of a showing that this control was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights, and that the control and breach of duty proximately caused the injury complained of." Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997) (internal quotation and citation omitted). "A simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing of the corporate veil." Etage Real Est. LLC v. Stern, 182 N.Y.S. 3d 47, 49 (N.Y. App. Div. 2022) (citations omitted).

## DISCUSSION

### A. Veil Piercing

For efficiency, the Court first addresses the second prong of the veil piercing analysis. Plaintiff has not shown that any alleged control over the corporate defendants was used to commit a fraud or wrong that caused plaintiff's injury. Instead, plaintiff has shown that he sold his portfolio to "satisfy his debt with [ICG Asia]. . . of $1,449,600," Compl. Ex. B-A, although he was aware the companies were experiencing cash flow issues, see

Pl. 56.1 ¶ 63, and knew about the "various entities engaged in stock-based loans with customers under the ICG banner," Mot. at 11. Even so, defendant Nord endeavored to pay plaintiff and went as far as personally guaranteeing loans for ICG USA from Steelworks Investments, Limited, demonstrating that he was not trying hide behind the veil of the ICG entities. Plaintiff's alleged wrong is no more than a breach of the General Release by the corporate defendants. Accordingly, plaintiff cannot show a fraud or wrong from any control by the individual defendants with respect to the November 2015 transaction and is not entitled to judgment as a matter of law.

For the avoidance of doubt, the Court also finds that plaintiff has not demonstrated that the individual defendants had complete domination over the corporate defendants, particularly in the context of small, closely held businesses, with respect to the November 2015 transaction.[9] For example, to demonstrate that the individual defendants used the ICG entities as their personal bank accounts, plaintiff points to a single transfer in 2011 of $500,000 from Hong Kong to the ICG entities in the U.S. and the individual

---

[9] In addition to the evidence in the record, plaintiff asks this Court to conclude that the corporate defendants did not observe corporate formalities, such as accurate record keeping, because the defendants did not retrieve any corporate documents from the office premises before they were evicted. See Mot. at 19-21. The Court previously directed plaintiff's counsel to take further discovery in the form of deposition testimony to "explore the defendants' efforts to obtain documents" and "obtain any clarity needed" through Request for Admissions. See ECF No. 38. Therefore, the Court will not draw any adverse inferences and will rely on the evidence in the record.

defendants' dividends or withdrawals from ICG, LLC. However, plaintiff fails to demonstrate that these funds were transferred to the individual defendants or how a transfer years before the November 2015 General Release is relevant.[10] Plaintiff also argues that the corporate entities were undercapitalized at the time the parties entered into the November 2015 General Release, but only supports that argument by saying that defendant Nord "could not confirm" the availability of assets at the ICG entities to make payments, Mot. at 12, even after plaintiff allegedly sold his $3 million stock portfolio. Even more relevant is that plaintiff acknowledges that he entered into the General Release because he knew that the counterparties did not have the resources to pay the debt at one time. Moreover, plaintiff's arguments regarding Mr. Nord's personal guarantees and irregular dividend/withdrawal policies are precisely the "trappings of sophisticated corporate life" that would "inevitably beckon the end of limited liability for small business owners." Waters, 890 F.2d at 601.

To be clear, the Court is not saying that there are no facts which plaintiff can reference on this motion. However, plaintiff has not tied any of the random facts to either transaction in which

---

[10] Plaintiff also points to the fact that the individual defendants opened another bank account under the name Readington Administrators when the corporate entities lost access to their own bank accounts as further support that the individual defendants were dominating the corporate entities. Pl. 56.1 ¶ 54. However, it is notable that the individual defendants did not commingle their personal funds with those of the ICG entities by simply using their personal bank accounts.

11

he entered in a manner that would support a finding of veil piercing against the individual defendants.

### B. Plaintiff's remaining claims

Having not established any evidence to pierce the corporate veil or any evidence of fraud, the Court addresses the plaintiff's remaining claims. First, in the absence of veil piercing, there is no basis to assert a breach of contract claim against the individual defendants since they were not signatories to the contract. Second, plaintiff brings a fraud and a breach of duty of good faith and fair dealing claims related to and/or arising from the General Release. Compl. ¶¶ 33, 36-39. A breach of an implied covenant of good faith and fair dealing claim cannot be maintained if "it is premised on the same conduct that underlies the breach of contract cause of action and is intrinsically tied to the damages allegedly resulting from the breach of contract." MBIA Ins. Corp. v. Merrill Lynch, 916 N.Y.S. 2d 54, 55 (N.Y. App. Div. 2011) (internal quotation marks and citation omitted). Even if pled in the alternative, claims of breach of implied covenant are dismissed when, as here, "the implied covenant and contract claims are based on the same facts." Merryman v. J.P. Morgan Chase Bank, N.A., No. 15 Civ. 9188 (VEC), 2016 WL 5477776, at *12 (S.D.N.Y. Sept. 29, 2016). In addition, the fraud claim involves contractual promises regarding prospective performance and is therefore duplicative of the breach of contract claim. See Merrill

Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F. 3d 171, 184 (2d Cir. 2007).

Third, plaintiff makes a claim for "book account." This is a statutory action that does not exist under New York law. Care Env't Corp. v. M2 Techs., Inc., No. Civ. 05-1600 (CPS), 2006 WL 148913, at *7 (E.D.N.Y. Jan. 18, 2006). And finally, as discussed above, plaintiff cannot demonstrate that there has been any financial commingling, let alone fraudulent conveyance. Thus, on this record, the Court dismisses all remaining claims against the individual defendants.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment to pierce the corporate veil is denied. It follows that the remaining claims against the individual defendants are not viable and are consequently dismissed. The Clerk of the Court is respectfully instructed to terminate the motion pending at ECF No. 62 and close the case.

**SO ORDERED.**

Dated:   March 13, 2024
         New York, New York

                                        _____
                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE